**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JACK M. LEE,

    Plaintiff,

v.   Case No: 8:13-cv-2239-T-30AAS

EQUITY PROPERTIES ASSET
MANAGEMENT, INC., EQUITY
PROPERTIES ASSET MANAGEMENT,
INC. DEFINED BENEFIT PENSION
PLAN and JACQUELINE S. CHANG,

    Defendants.

**ORDER**

THIS CAUSE comes before the Court upon Plaintiff's Motion to Discharge the Mitchell Law Group's Charging Lien (Doc. 206) and Mitchell Law Group's Response in Opposition (Doc. 211). Upon review, the Court grants Plaintiff's motion.

**BACKGROUND**

In August 2013, Plaintiff Jack Lee ("Lee") filed this ERISA action against his former employer, Equity Properties Asset Management, Inc. ("EPAM"), EPAM's Defined Benefit Pension Plan ("Pension Plan"), and EPAM's owner. Lee alleged several claims against Defendants, including one that the Pension Plan owed him substantial unpaid pension benefits. In October 2013, Defendants filed a counterclaim, alleging that Lee in fact owed the Pension Plan money because he had overpaid himself pension benefits in 2012, when he was an administrator of the Plan. The Parties' dispute centered on whether

Lee qualified as a "male direct owner" of EPAM, which would have entitled him to EPAM's highest level of pension benefit.

On or around May 2015, Lee retained William Mitchell ("Mitchell") of the Mitchell Law Group as co-counsel. On May 5, 2015, Mitchell sent Lee a client engagement letter confirming the representation. (Doc. 206, Ex. A.) In the letter, he stated that his hourly rate was $300 per hour and he would bill Lee on a monthly basis. He also stated that he would not begin work on Lee's case until Lee paid a $5000 deposit as an advance against his fees.

Lee paid the $5000 deposit, and Mitchell began work on his case. Over the next several months, Lee's attorneys engaged in motion practice, including filing a lengthy motion for partial summary judgment.

On November 10, 2015, the Court granted summary judgment on Lee's claim for pension benefits and several of Defendants' affirmative defenses. It held that EPAM's decision to deny Lee benefits as a "male direct owner" was arbitrary and capricious, and it remanded Lee's claim to the Pension Plan administrator to recalculate his benefits entitlement.

In September 2016, Mitchell and Lee began to fight about Mitchell's attorney's fees. (Doc. 211-5.) Mitchell threatened that he would have to withdraw if Lee did not pay him because he was "not in a position to continue to work without payment on [his] case." Lee responded with the following:

> [U]nderstand that you plan to request payment from the court based on the summary judgment ruling. This has always been my understanding as to the source of funds for attorney's fee[s]. You may want to consider applying for the fees prior to requesting permission to withdraw.

2

Mitchell withdrew from the case not long thereafter, on October 3, 2016.

On January 8, 2017, Mitchell filed notice that he was imposing a charging lien for the attorney's fees Lee owed him. (Doc. 161.)

Approximately two weeks later, the Parties settled the case. The Parties agreed that Lee will receive $230,000 from the Pension Plan. (Doc. 205-1.) Lee will not receive the $230,000 directly. Rather, the Pension Plan will transfer the money to the bank account of an insurance, annuity, or pension company selected by Lee. The Parties noted that the $230,000 is "not intended to be a payment of damages of any kind" but rather "the transfer of pension funds from the Pension Plan to a new insurance, annuity, or pension company that will thereafter administer the pension funds."

Lee then filed the present motion, requesting that the Court discharge Mitchell's charging lien.

## DISCUSSION

A charging lien represents an attorney's equitable right to have his fees secured to him in the judgment or recovery of the lawsuit that he worked on. *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom*, 428 So. 2d 1383, 1384 (Fla. 1983). The right to impose a charging lien developed under common law because courts wanted to ensure that a litigant could not "walk away with his judgment and refuse to pay his attorney for securing it." *Litman v. Fine, Jacobson, Schwartz, Nash, Block & England, P.A.*, 517 So. 2d 88, 91 (Fla. Dist. Ct. App. 1987) (internal citation omitted). In order to impose a charging lien, an attorney must show: (1) an express or implied contract between the attorney and client, (2) an express or implied understanding that payment is dependent on

3

recovery or will come from the recovery, (3) an attempt to avoid payment of the fees or a dispute as to the amount of fees, and (4) timely notice. *Sinclair*, 428 So. 2d at 1385.

Lee argues that Mitchell's charging lien is invalid for three reasons. First, he argues that there was no understanding that Mitchell's attorney's fees were dependent on recovery or would come from the recovery. Second, he argues that charging liens apply only to the proceeds of a lawsuit, and he received none. Third, he argues that ERISA's anti-alienation provision prevents Mitchell from imposing a charging lien on his pension benefits. The Court will address each of these arguments in turn.

      *i.*      *Mitchell's and Lee's understanding regarding Mitchell's fees*

The Florida Supreme Court has stated that, in order to impose a charging lien, an attorney must show that the parties had an express or implied understanding that payment was dependent on recovery or would come from the recovery. *Sinclair*, 428 So. 2d at 1385. Historically, Florida appellate courts have interpreted this requirement leniently due to equitable considerations. *See, e.g., Conroy v. Conroy*, 392 So. 2d 934, 937 (Fla. Dist. Ct. App. 1980) (stating that "rudimentary fairness" requires that the attorney need show only an implied understanding that the client would pay him a reasonable fee); *see also Sinclair*, 428 So. 2d at 1385 (citing *Conroy* with approval). For example, in *Sinclair*, the court held that an attorney could impose a charging lien because the nature of the litigation and the relief sought evidenced a reasonable understanding that payment could take the form of court-ordered attorney's fees paid by the opposing party. *Id.* Furthermore, if the parties have an agreement that the attorney will be paid fees but have not agreed on the source of

4

the fees, the attorney can impose a charging lien. *Litman*, 517 So. 2d at 91 (internal citation omitted).

In this case, it is not clear whether Mitchell and Lee ever had a common understanding regarding the source of Mitchell's fees. Although Mitchell sent a client engagement letter indicating that he expected to be paid monthly based on the hours he billed and in fact sent Lee invoices based on his billable hours, Lee never actually paid him for those hours. When Mitchell confronted Lee about this, Lee stated that it had "always" been his understanding that Mitchell would be paid pursuant to a court-ordered award of fees. Mitchell withdrew from the case before it concluded.

Regardless, Mitchell has demonstrated the prerequisites to impose a charging lien. It is clear that Mitchell and Lee had an agreement that Mitchell would be paid for his services somehow. Given that ERISA includes a fee-shifting provision, the parties could reasonably have expected that Mitchell might be paid through court-ordered fees. Indeed, Lee himself expressed that it was "always" his understanding that Mitchell would receive his fees in this way. For Lee to now argue that Mitchell cannot impose a charging lien because Mitchell expressed (at least initially) a different understanding is unjustified. Accepting Lee's argument could frustrate the equitable purpose of a charging lien by allowing a litigant to "give his attorney the 'run around' and escape freehanded with the fruits of the litigation." *Miller v. Scobie*, 11 So. 2d 892, 894 (1943).

    ii.    *Whether there were proceeds from the lawsuit*

Charging liens apply to the proceeds of a lawsuit. *Glickman v. Scherer*, 566 So. 2d 574, 575 (Fla. Dist. Ct. App. 1990). "[W]here there are no proceeds of the judgment, there

is nothing to which a lien may, as a practical matter, attach." *Id*. Assets are considered proceeds; something without monetary value, like a child custody order, is not. *See id*. Furthermore, if an attorney's services did not produce a positive settlement or judgment for the client, then the attorney is not entitled to a charging lien. *LaVere-Alvaro v. Syprett, Meshad, Resnick, Lieb, Dumbaugh, Jones, Krotec & Westheimer, P.A.*, 54 So. 3d 1056, 1057-58 (Fla. Dist. Ct. App. 2011).

This lawsuit resulted in proceeds—$230,000 in pension funds. Moreover, Mitchell's services helped produce these funds, which constituted a positive settlement for Lee. When Lee initiated this case, Defendants had taken the position that he owed the Pension Plan $54,000 in overpaid benefits. After Mitchell and his co-counsel filed and won Lee's motion for summary judgment of his pension benefits claim, Defendants agreed to pay Lee $230,000 in benefits. Because Mitchell helped Lee realize this monetary gain, Lee cannot successfully argue that Mitchell's services created no proceeds.

### iii. *Applicability of ERISA's anti-alienation provision*

ERISA includes an anti-alienation provision that mandates that "[each] pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). The provision is intended to protect employees' pension benefits—to "ensure that if a worker has been promised a defined pension benefit upon retirement . . . , he will actually receive it." *Patterson v. Shumate*, 504 U.S. 753, 764-65 (1992) (internal citation and quotation marks omitted).

ERISA's anti-alienation provision prevents creditors from garnishing pension funds unless some exception to this statutory ban is applicable. *Guidry v. Sheet Metal Natl.*

6

*Pension Fund*, 493 U.S. 365, 372 (1990). The Supreme Court declined to infer an equitable exception to the provision, notwithstanding that its holding might "prevent[] others from securing relief for the wrongs done [to] them." *Id.* at 376. In *Guidry*, a former union official had embezzled money from the union. *Id.* at 367. Even though the official's actions had harmed the union and beneficiaries of the union's pension plans, the Court held that the union could not place a constructive trust on the official's pension. *Id.* at 372-74.

The $230,000 in funds that Lee will receive pursuant to the settlement are his pension benefits. This case was primarily about Lee's pension eligibility, and it settled after the Court held that Lee was entitled to pension as a "male direct owner." The settlement agreement describes the $230,000 as "a transfer of pension funds." The Pension Plan—not EPAM or EPAM's owner—will be paying the funds. Furthermore, the Pension Plan will not pay the funds directly to Lee, but will instead transfer them to another pension company that will disburse them to Lee.

Because the $230,000 constitutes pension benefits, it cannot be garnished. Just as there could be no constructive trust on the union official's pension in *Guidry*, Mitchell cannot impose a charging lien in this case.

Mitchell attempts to argue that ERISA's anti-alienation provision does not apply because the Parties arrived at the $230,000 settlement amount based on bargaining and not the Pension Plan's provisions. He submitted an actuarial report Lee obtained in July 2016, in which the actuary calculated the present value of Lee's pension benefit to be $1,087,122. Because Lee settled for far less than this amount after winning summary judgment on his

pension claim, Mitchell contends that the $230,000 figure is better characterized as a term of a settlement agreement than as vested pension benefits.

Mitchell cites two federal appellate decisions in support of this argument. Both cases distinguish between a "pension entitlement" (which "arises under the terms of the pension plan") and a "contested pension claim" (which "arises under a settlement agreement"), the latter of which is "outside the realm" of the anti-alienation provision. *Kickham Hanley P.C. v. Kodak Ret. Income Plan*, 558 F.3d 204, 213 (2d Cir. 2009) (internal citations omitted); *Lynn v. CSX Transp., Inc.*, 84 F.3d 970, 975 (7th Cir. 1996) (internal citations omitted).

Although this language facially supports Mitchell's argument, a closer read of the cases does not. In creating this distinction, the courts appeared to be concerned with an employee's ability to settle a case by waiving some or all of his pension benefits. *See Kickham*, 558 F.3d at 213 ("While pension entitlements are subject to the anti-alienation provision, contested pension claims are not and may be knowingly and voluntarily released as part of a settlement…"); *Lynn*, 84 F.3d at 975 ("The anti-alienation provision . . . does not impose a bar on settlement agreements wherein pension claims are knowingly and intentionally resolved by employees.").

As the Seventh Circuit explained in *Lynn*:

> Pension entitlements are, without exception, subject to the anti-alienation provision of ERISA. Contested pension claims, on the other hand, are simply outside the realm of the provision. The distinction between these two categories is a critical one, and . . . one that has not yet been drawn with sufficient clarity. A pension entitlement arises under the terms of the pension plan itself. A contested pension claim, by contrast, arises under a settlement agreement. A release may prevent a plan participant from asserting claims based on a settlement agreement, but may not bar claims based on pension entitlements.

8

*Lynn*, 84 F.3d at 975 (internal citations omitted).

The fact that Lee appears to have settled for an amount less than his full pension entitlement does not change the nature of the funds. His dispute was over the language of the pension plan, not a settlement agreement. And the proceeds of the lawsuit are to be distributed from the Pension Plan to another pension company, never losing their character as pension benefits subject to the anti-alienation provision.

Because Mitchell cannot impose a charging lien on the $230,000 in pension funds, the Court must discharge Mitchell's lien. However, the Court in no way means to imply that Mitchell is not entitled to fees, or that he cannot attempt to collect those fees through other means.

For the foregoing reasons, it is ORDERED AND ADJUDGED that:

1. Plaintiff's Motion to Discharge the Mitchell Law Group's Charging Lien (Doc. 206) is granted.

**DONE** and **ORDERED** in Tampa, Florida, on March 7, 2017.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record